KENNETH S. HIXSON, Judge
Appellants Woodrow Anderson III and Kandice A. Gibbons (co-trustees) appeal *145 from the denial of a motion to compel arbitration of a complaint filed by appellees Seth Anderson and Trevor Anderson (beneficiaries). Appellants argue on appeal that the trial court was required to compel arbitration because there was a valid agreement containing an arbitration provision and the scope of the arbitration provision encompassed the dispute herein. Appellants further argue that the trial court erred in deciding that issues of fraud were for the court and not for arbitration. We affirm.
The Facts
The underlying litigation is a contest among family members over a trust. The players: Woodrow W. Anderson, Jr., grandfather (hereinafter referred to sometimes as "Woodrow, Jr."); Woodrow Anderson III (hereinafter referred to sometimes as "Woodrow III") and Kandice A. Gibbons, children; and Seth Anderson and Trevor Anderson, grandchildren.
On April 1, 2014, Woodrow, Jr. executed a trust agreement titled "The WWA Living Trust" (hereinafter referred to as "the Trust"). Woodrow, Jr. appointed himself as the original trustee, and appointed appellants Woodrow III (his son) and Kandice A. Gibbons (his daughter) as successor co-trustees. Relevant to this appeal, the Trust provided that all grandchildren of the grantor[1] were to have their college educations paid by the Trust up to $ 100,000 total and no more than $ 25,000 per year. The Trust also provided that each grandchild was to receive a car, not to exceed $ 30,000, upon successful completion of one semester or two terms. Additionally, each grandchild was to receive $ 500 per month for miscellaneous expenses. Appellees, Seth Anderson and Trevor Anderson, are two of Woodrow, Jr.'s grandchildren.
The appellees alleged in their complaint and argued below that in the weeks preceding November 7, 2014, Woodrow, Jr. was in poor health and was often under the influence of heavy narcotics for medication of his terminal illness. On November 7, 2014, Woodrow, Jr. and the appellants executed a document titled "First Amendment to the WWA Living Trust" (Amendment). Woodrow, Jr. executed the Amendment as "Trustor" and "First Trustee" and Woodrow III and Gibbons executed the Amendment as "Successor Co-Trustees." The Amendment made several significant revisions to the Trust. Woodrow, Jr. died seventeen days later on November 24, 2014, and pursuant to the terms of the Trust the appellants became the Co-Trustees. The Co-Trustees managed the Trust apparently unremarkably leading up to January 4, 2017.
The Circuit Court
On January 4, 2017, appellees Seth Anderson and Trevor Anderson, as grandchildren and beneficiaries of the Trust, filed a "Complaint for Breach of Trust" against the appellants as Co-Trustees. The appellees alleged that the Amendment was obtained by the undue influence of the appellants while Woodrow, Jr. was under the influence of heavy narcotics for medication of his terminal illness. The appellees asserted that the revisions in the Amendment were not in the best interests of the beneficiaries. In particular, the Amendment revised the Trust's provision for all grandchildren to receive education benefits as generally described above by giving the Co-trustees sole discretion as to whether to pay such benefits. According to the complaint, appellant Co-Trustee Kandice A. Gibbons had stated that she controls the money and that it will go only to people who respect her. The complaint further *146 alleged that there were other changes in the Amendment that benefited the Co-Trustees personally and were discriminatory to the beneficiaries. The complaint also alleged that the appellants had breached the Trust by failing to provide the beneficiaries a vehicle and $ 500 per month in miscellaneous expenses as set forth by the Trust and not modified by the Amendment. The appellees claimed that the Co-Trustees had acted in bad faith and had breached their fiduciary duty to the appellees. The appellees sought to set aside the Amendment and to reform the Trust as set forth in the original Trust agreement; to remove the Co-Trustees with new trustees appointed; for the Co-Trustees to receive no compensation under the Trust; an accounting of the Trust; to restore any funds improperly distributed under the purported Amendment; a constructive trust for any property improperly removed from the Trust; a judgment against the appellants and the Trust for the value of the vehicles that should have been purchased; payment of $ 500 per month that should have been paid pursuant to the Trust; and the amounts the appellees had expended on educational expenses.
On February 6, 2017, the appellants as Co-Trustees filed a motion to dismiss or in the alternative to compel arbitration. The Trust and the Amendment each contained an arbitration clause; however, the arbitration clauses were not identical. In their motion, the appellants argued that the arbitration provisions in both the Trust and the Amendment required the matter to go to arbitration rather than being heard in a court. The Trust contains the following arbitration provision:
Trustees consent that any dispute relating in any way to this Agreement will be resolved by binding arbitration as described in this paragraph, rather than in court.
The Amendment contains the following arbitration provision:
Any claim or dispute, which is not resolved by agreement of the parties, concerning questions of fact or law arising out of or relating to this Trust, or its breach, or the actions or status of any Trustee or any Trust beneficiary, or claims of any child or grandchild of the Trustor, or any claims of Trust beneficiary or the Trust beneficiary's trust, or any dispute relating in any way to this Trust Agreement or its functioning and performance, will be resolved by binding arbitration as described in this paragraph, rather than in court. This arbitration procedure shall apply to all Successor Trustees; Trust beneficiaries; Trust beneficiaries' trusts; children of Trustor; grandchildren of Trustor; and any claimants or contestants to this Trust.
On February 17, 2017, the appellees filed a response to the appellants' motion to dismiss or in the alternative to compel arbitration. In their response, the appellees argued that the arbitration clause in the Trust does not purport to bind the beneficiaries, and that such provisions were not executed with the consent or knowledge of the appellees and were not enforceable as to them. The appellees further argued that the grantor was not competent at the time he executed the Amendment, and thus the Amendment and the arbitration clause contained therein were not valid.
On January 31, 2018, the trial court held a pretrial hearing and addressed the appellants' motion to dismiss and motion to compel arbitration. The following colloquy ensued:
APPELLANTS' COUNSEL : Your Honor, we filed a Motion to Dismiss and an Order to Compel to compel arbitration. In the amendment that was created, *147 there is language that forces any dispute to go to arbitration.
TRIAL COURT : Was that in the original Trust or in the amended?
APPELLANTS' COUNSEL : It was in the amended Trust and we-
TRIAL COURT : But that amendment is solely up to the Court to determine as to its validity, would you not agree?
APPELLANTS' COUNSEL : Well, if you're determining that I think you have to determine the validity of the entire Trust.
....
TRIAL COURT : Okay. [Appellees' counsel] has called into question that very amendment as the Court should set it aside as being under fraud. So, if the Court determines that its fraud, the arbitration would be out.
APPELLANTS' COUNSEL : I suppose that it would.
....
APPELLANTS' COUNSEL : Our position was that you go to arbitration to do that. That's what it says.
TRIAL COURT: But the whole question before the Court is whether there is an amendment or not.
APPELLANTS' COUNSEL : [Appellees' counsel] was forcing that and I said we went into arbitration.
TRIAL COURT : You don't go into arbitration to determine whether, based on a document, to where the document itself is in question.
APPELLANTS' COUNSEL : I mean if you are going to go in and revamp everything in the Trust, then what is the purpose of having a Trust?
TRIAL COURT : The question goes beyond the face of the document. It goes to its integrity. Before you go by the amendment, you have to determine whether or not it has credibility and integrity. The arbitrator can't do that. The only one to do that is the court.
APPELLANTS' COUNSEL : The Trust says it goes into arbitration. She shouldn't have a fishing expedition to come in and get everything she wants then the court come back and say, "You know what? I think this is legitimate and the case is for arbitration."
TRIAL COURT : The document, the amendment is in question. It can't prop itself up and go by the terms of it because of the allegations. The Court does have jurisdiction. It is not dismissed. Your Motion is denied. It is denied until such point as this Court determines that it has the integrity to which it deserves, that document, then you go under it.
....
APPELLANTS' COUNSEL : Your Honor, could I just ask why it would be denied again if it's in the original.
TRIAL COURT : Because this Court's in much better shape than an arbitrator to determine whether or not there was overreaching, fraud or duress. An arbitrator determines issues between facts as a mediator. This Court is in much better shape and position to hear issues relating to fraud. Now as far as carrying out the agreement, as far as whether somebody gets paid or not, perfectly within the purview of an arbitrator. But whether or not this man, Mr. Anderson was put under duress, fraud, overreaching, that's a question for a court, not an arbitrator.
APPELLANTS' COUNSEL : I just want to point out that Arkansas Code Annotated section 16-108-206 says, "An agreement contained in a record to submit to arbitration any existing or subsequent controversy between the parties to the agreement is valid, enforceable *148 and irrevocable except upon a ground that exists in law or in equity for the revocation of a contract."
TRIAL COURT : I just turned down your Motion.
On March 16, 2018, the trial court entered an amended pretrial order wherein the trial court denied the appellants' motion to dismiss and motion to compel arbitration.[2] In the pretrial order, the trial court ordered discovery completed within 120 days of the pretrial scheduling conference and set the matter for a bench trial. On March 28, 2018, appellants timely appealed from the March 16, 2018 order that denied their motion to compel arbitration.
The Appeal
On appeal, the appellants contend that the trial court was required to compel arbitration because there was a valid agreement and the scope of the arbitration clause encompassed the dispute. Appellants rely on the arbitration clauses in the Trust and the Amendment, and argue that under either of those provisions the dispute fell within the scope of arbitration. The appellants also assign error to the trial court's decision that any issues of fraud were for the court as opposed to arbitration.
An order denying a motion to compel arbitration is an immediately appealable order. Ark. R. App. P.-Civ. 2(a)(12) ; Ark. Code Ann. § 16-108-228(1) (Repl. 2016). We review a trial court's order denying a motion to compel arbitration de novo on the record. Stipanuk v. Williams , 2018 Ark. App. 319, 552 S.W.3d 34.
It is important to understand that the dispute we are deciding in this appeal is not whether the Co-Trustees are acting contrary to the provisions of the Trust or Amendment or to the detriment of the beneficiaries. Rather, this dispute concerns the testamentary capacity of the grantor and the validity of the Trust or the Amendment itself. On appeal, the narrow issue is, where there is an allegation of undue influence or incompetency of the grantor in the execution of a trust agreement or an amendment thereto, whether the validity of the trust must be determined by arbitration. We hold that under these circumstances, it cannot. We acknowledge that the Trust and the Amendment to the Trust each contain an arbitration provision which could arguably require arbitration of disputes and claims arising from the Trust, and we make no comment as to the enforceability of an arbitration provision to resolve those disputes or claims. However, we hold that the validity of the Trust and the Amendment to the Trust is within the province of the trial court irrespective of any arbitration provision contained therein. This is a developing area of the law, and there is sparse case law addressing the issue.
First, we point out that a trust agreement is not a contract.[3] A trust contains *149 the testamentary desires or instructions of the settlor/grantor. There is no requirement of a meeting of the minds. The goal in these disputes generally is to ascertain the testamentary intent of the settlor. Since a trust agreement is not a contract, we cannot carte blanche apply contract/arbitration principles, statutes, or precedent to this dispute. However, we can borrow some of that pertinent body of law.
Because a trust is not a contract, the starting point in our analysis is to determine whether a trust may contain any arbitration provision. Arkansas law is silent on this issue. Some states, but not many, have enacted legislation to specifically address the issue. In 2004, the American College of Trusts and Estate Counsel formed a task force to address the inclusion of arbitration provisions in testamentary instruments. The task force concluded that legislative action is the most expeditious and effective way for states to ensure the enforceability of their citizens' trust arbitration provisions. The task force proposed a Model Act with suggested statutory provisions, for adoption by states. The Model Act included two key elements. First, it made trust and will provisions requiring arbitration of disputes between, or among, trustees and beneficiaries, enforceable. Second, it limited the scope of enforceable trust arbitration provisions. The Model Act enforced only arbitration provisions requiring arbitration of disputes regarding the interpretation of the trust and the fiduciary duty of the trustee. The Model Act would not enforce arbitration provisions that sound to govern disputes relating to the validity of the trust.
The first state to adopt the Model Act was Florida in 2007 when it enacted a provision in its probate code providing that, "[a] provision of a will or trust requiring the arbitration of disputes, other than disputes of the validity of all or part of a will or trust, between or among the beneficiaries and a fiduciary under the will or trust, or any combination of such persons or entities, is enforceable." Fla. Stat. Ann. § 731.401(1). In conformance with the Model Act, the Florida statute explicitly excludes disputes over the validity of the donative instrument from arbitration. In 2008, Arizona enacted a new statute making trust arbitration enforceable. Ariz. Rev. Stat. Ann. § 14-10205. Like the Florida statute, the Arizona statute does not enforce arbitration provisions that require arbitration of the validity of a trust document. Arkansas has not enacted a statute of this kind, so there is no provision in the Arkansas Trust Code that would expressly require a beneficiary of a trust to submit to arbitration.
There is also case law from other jurisdictions that offers guidance. In Rachal v. Reitz , 403 S.W.3d 840 (Tex. 2013), a trust beneficiary brought an action against the trustee alleging misappropriation of trust assets and failure to provide an accounting.
*150 The trust contained a broad arbitration clause, specifically including the beneficiaries and providing that "any dispute of any kind involving [the] trust" be decided by arbitration. Id. at 842. The Texas Supreme Court approved the inclusion of the arbitration provision into the trust agreement, but this case did not involve a contest over the validity of the trust itself.
A California case addressed whether an arbitration clause in a trust instrument was enforceable against a beneficiary's claim seeking to invalidate the trust instrument. In McArthur v. McArthur , 224 Cal. App. 4th 651, 168 Cal.Rptr.3d 785 (2014), the trust beneficiary was attacking an amended trust document that gave her sister more money on the basis that her sister took unfair advantage of their mother while her mother was alive. The amended trust contained an arbitration clause requiring mediation and, if necessary, arbitration of "any claim or dispute arising from or relating to the trust as amended." The trial court denied the motion to compel arbitration, and the California appeals court affirmed. Hence, the California court indirectly approved the principle that the validity of a trust agreement was not subject to arbitration.
Among the states that have addressed the issue, the common theme is that while a trust agreement may contain arbitration provision, the arbitration provision cannot compel arbitration to determine the validity of the trust itself. We conclude likewise and hold that an arbitration provision within a trust agreement cannot compel arbitration to determine the validity of the trust.[4]
In the present case, the appellee beneficiaries seek to set aside the Amendment to the Trust on grounds that the Amendment was procured through undue influence while the grantor was under the influence of heavy narcotics or otherwise incompetent. This is a challenge to the validity of the Amendment. We hold that because the appellees are challenging the validity of the Amendment itself, this is a determination for a court and not one for arbitration.[5] Accordingly, we affirm the trial court's order denying the appellants' motion to compel arbitration.
Affirmed.
Gladwin and Vaught, JJ., agree.

The trust document refers to Woodrow Anderson, Jr., as the "grantor."

The trial court had entered a prior order that denied the appellants' motion to dismiss, but that order failed to address the motion to compel arbitration.

Trusts are distinguishable from contracts in that the parties to a contract may decide to exchange promises, but a trust does not rest on an exchange of promises and instead merely requires a trustor to transfer a beneficial interest in property to a trustee who, under the trust instrument, relevant statutes, and common law, holds that interest for the beneficiary. The undertaking between the settlor and trustee is not properly characterized as contractual and does not stem from the premise of mutual assent to an exchange of promises. Although the trustee's duties may derive from the trust instrument, they initially stem from the special nature of the relation between trustee and beneficiary, and thus, the trustee's undertakings or promises in a trust instrument are normally not contractual. A trust is also distinguishable from a contract in that a trust is a fiduciary relationship with respect to property. The relation ordinarily created by a contract is that of promisor and promisee, obligor and obligee, or debtor and creditor; in most contracts of hire, a special confidence is reposed in each other by the parties, but more than that is required to establish a fiduciary relation. An essential aspect of a trust is that the putative trustee has received property under conditions that impose a fiduciary duty to the grantor or a third person; a mere contractual obligation, including a contractual promise to convey property, does not create a trust. One of the major distinctions between a trust and contract is that in a trust, there is always a divided ownership of property, the trustee having usually a legal title and the beneficiary an equitable one, whereas in contract, this element of division of property interest is entirely lacking. 76 Am. Jur. 2d Trusts § 12 (2019).

Based on our narrow holding, we do not address whether arbitration provisions contained in a trust agreement are enforceable when the validity of the trust is not at issue.

Appellants rely in part on Arkansas Annotated Code section 16-108-206 (Repl. 2016) in support of their position that the court erred in failing to compel arbitration. Arkansas Code Annotated section 16-108-206(a) provides, "An agreement contained in a record to submit to arbitration any existing or subsequent controversy arising between the parties to the agreement is valid, enforceable, and irrevocable except upon a ground that exists at law or in equity for the revocation of a contract." However, assuming arguendo that Arkansas Code Annotated section 16-108-206(a) is applicable to a trust agreement, the appellants fail to appreciate subsection (b) which provides, "The court shall decide whether an agreement to arbitrate exists or a controversy is subject to an agreement to arbitrate." Were we to decide that Arkansas Code Annotated section 16-108-206 is applicable to a trust agreement, we would also arrive at the conclusion that under subsection (b), it is within the province of the court to decide whether an agreement to arbitrate exists and that would include the dispute herein concerning the validity of the Amendment and whether the settlor/grantor was subject to undue influence or had insufficient testamentary capacity to execute the Amendment to the Trust. See also McArthur, supra.